■ Estelle Yoss, Individually and as Administrator of the Estate of Murray Yoss, Deceased, Appellant, v State of New York, Respondent. (Claim No. 87932.) [660 NYS2d 217] —Mercure, J. Appeal from a judgment of the Court of Claims (Hanifin, J.), entered January 23, 1996, upon a decision of the court following a bifurcated trial in favor of the State on the issue of liability.

This claim arises out of a June 24, 1993 one-car accident that occurred on State Route 17 in the Town of Mamakating, Sullivan County, causing the death of the driver, Murray Yoss (hereinafter decedent), and seriously injuring claimant, the front-seat passenger. It is undisputed that the vehicle went off the right side of the highway, then back onto the highway where decedent apparently overcorrected, causing the car to go off the right side of the highway again and then begin to spin in a counterclockwise direction, become airborne and roll over several times. The claim of liability against the State is predicated upon allegations that the State was negligent in designing and maintaining the roadway in such a way that there existed an excessive drop-off at the edge of the road which prevented the vehicle from returning onto the roadway and in permitting cut logs to remain along the side of the road (the apparent remnants of State tree-clearing activity), which are alleged to have caused the car to become airborne and precipitate the rolling motion. Following a trial on the issue of liability, the Court of Claims concluded that the State was

negligent as alleged by claimant but that said negligence was not a proximate cause of the injuries sustained by decedent and claimant. The Court of Claims accordingly granted judgment in favor of the State dismissing the claim. Claimant appeals.

We affirm. We first note that, although making a few conclusory references to the Yoss vehicle's inability to return to the road because of a five inch drop-off, claimant does not contend that the Court of Claims erred in its conclusion that there was no established causal connection between the accident and the demonstrated areas of excessive drop-off. Accordingly, we need not address that aspect of the Court of Claims' determination, which has abundant support in the record in any event.

In considering the subject of the logs that were permitted to exist within 20 feet of the edge of the traveled portion of the highway, it is important to be mindful of the fact that, although this Court may in a nonjury case "weigh the relative probative force of conflicting inferences that may be drawn from the testimony" (*Cordts v State of New York*, 125 AD2d 746, 749), considerable deference will be given the credibility determinations of the trial court, which is in a much better position to assess the evidence and the truthfulness and reliability of the witnesses (*see, Niles v State of New York*, 201 AD2d 774, 776). Here, the critical issue separating the State's witnesses and claimant's expert was whether the Yoss vehicle was already in the mechanics of a roll when it came in contact with the cut logs or, as contended by claimant, was caused to become airborne and to roll as a result of striking the logs.

State Police Investigator Peter Scalia conducted an investigation of the accident and prepared a scaled diagram showing the path he believed the Yoss automobile to have followed. His accident report, made soon after the accident, stated that the vehicle "slid through a grassy area, struck several cut stumps, became airborn[e], [and] hit the embankment". At trial, however, Scalia testified that his diagram was incorrect and he currently believed that the vehicle was actually turned sideways a bit more than the diagram indicated. Scalia noted that the logs showed no paint transfer from the vehicle and there were no cuts on the logs indicating that they had been struck. In addition, Scalia testified concerning his observation of two "furrow" marks in the grass and dirt approaching the log pile and also the fact that the right tire rim was embedded with grass and dirt, both indicating that the car was sliding sideways, with the passenger side leading, as it approached the log pile. From his observations, Scalia concluded that the

car was "in the dynamics" of a roll before it came in contact with the logs, that the logs were not sufficiently elevated to cause the vehicle to roll and that the car would have rolled over even if the logs had not been present.

Scalia's opinion was fully supported by Lawrence Levine, an accident reconstruction expert with a Master's degree in transportation engineering and civil engineering, who offered the additional conclusions that the vehicle had already proceeded in its roll to the point where, if any part of it came in contact with the logs, it was the bottom of the carriage or wheels and that had the car not contacted the logs, it would have rolled over more times, likely killing claimant as well as decedent. Although the conclusions of the State's experts were contradicted by the testimony of Paul Streb, a civil traffic engineer who testified for claimant, we are not persuaded to upset the Court of Claims' extensive factual findings. To the contrary, based upon our review of the record, we conclude that the credible evidence preponderated greatly in the State's favor.

Under the circumstances, we agree with the Court of Claims' conclusion that the presence of cut logs on the side of the highway did not contribute in a substantial way to the injuries sustained by claimant and decedent (*see, Gutelle v City of New York*, 55 NY2d 794, 796; *Nallan v Helmsley-Spear, Inc.*, 50 NY2d 507, 520; *Schichler v State of New York*, 110 AD2d 959, 961, *affd* 66 NY2d 954). Claimant's additional contentions have been considered and found unavailing.

Cardona, P. J., White and Carpinello, JJ., concur. Ordered that the judgment is affirmed, without costs.