■ MARIRITA VACHON, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 97812.) [729 NYS2d 212] —Peters, J. Appeal from a judgment of the Court of Claims (Collins, J.), entered May 24, 2000, upon a decision of the court following a bifurcated trial on the issue of liability which granted the State's posttrial motion to dismiss the claim.

On April 7, 1997, claimant tripped and fell down a stairway while exiting the State Capitol from the south portico heading west on State Street in the City of Albany. Claimant commenced this action alleging that the State negligently allowed the existence of a hazardous and dangerous condition on the landing of the portico leading to the stairway because it was

---

comprised of rectangular granite slabs, set in place between 1870 and 1875, which had a height differential ranging from 1 to 1½ inches which caused her to trip. Claimant further alleged that the State was negligent by its placement of only a single handrail on the stairway.

At trial, claimant testified that she entered and exited the Capitol by the western end of the portico on State Street. Upon entrance, she observed and used the sole handrail present. Approaching that stairway upon her exit, she testified that she was looking straight ahead as she tripped on the landing of the portico, causing her to reach for a handrail on the left side of the stairway as she was descending. Finding none, she fell to the ground. She testified that she did not know exactly what caused her to fall at such time and explained that to Stephen McDonough, a member of the Capitol Police, who responded to the emergency call. McDonough testified that claimant never told him that she tripped, only that she lost her balance. He further testified that he had worked at the Capitol for 10 years and was not aware of any other accident occurring on that stairway.

Claimant's expert, Stanley Fein, a civil engineer, testified that because the stairs are 73 inches wide and have only one handrail, this condition violates both the State Building Code (*see*, 9 NYCRR part 600 *et seq*. [hereinafter the Building Code]) and "good and accepted practice." He also opined that the granite slabs on the portico were slightly elevated as compared to the adjacent slabs thereby creating a tripping hazard when considered in relation to the stairway; he did not offer a measurement of this alleged difference in elevation. He further opined that the accident "probably" would not have occurred if claimant had a second handrail available.

Building Superintendent Kevin O'Connor testified that he checked the maintenance records and State Police reports and found no history of prior accidents or complaints at this location. He iterated that the sole handrail on the stairway was added sometime after March 1995 at a price of approximately $200 and that at such time the assessed value of the Capitol exceeded one billion dollars.

The State's expert witness, Alvin Bryski, also a civil engineer, testified that he examined the scene of the accident and measured not only the width of the stairway but also the height differential of the subject granite slabs. His determination yielded a stairway measurement of 72 inches and a height differential of the slabs ranging from three sixteenths of an inch to one eighth of an inch. Although Bryski admitted that

new construction would have required the installation of two handrails on this stairway, the lack of the second handrail did not violate "good and accepting engineering practices" or the Building Code since the construction of the stairway predated the enactment of the Building Code and the renovations thereto were minimal. He further opined that the additional handrail would not have prevented plaintiff's fall.

At the close of claimant's proof, the State moved for a directed verdict which was renewed at the close of evidence. It later filed a motion to dismiss which was granted by the Court of Claims after trial. This appeal ensued.

While we are empowered "to independently weigh the relative probative force of conflicting inferences that may be drawn from the testimony presented" (*Sullivan v State of New York*, 276 AD2d 989, 990; *see, Yoss v State of New York*, 241 AD2d 794, 795; *Cordts v State of New York*, 125 AD2d 746, 749), we will give deference to the findings made by the Court of Claims regarding the dimensions of both the stairway and the height differential of the granite slabs since they are based upon the court's assessment of the witnesses' credibility, expert or otherwise (*see, Sullivan v State of New York, supra*, at 990). In our review, however, we heed the Court of Appeals' guidance that "there is no 'minimal dimension test' or per se rule that a defect must be of a certain minimum height or depth in order to be actionable" (*Trincere v County of Suffolk*, 90 NY2d 976, 977). That "determination depends upon the peculiar facts and circumstances of the case, including the width, depth, elevation, irregularity and appearance of the defect along with the time, place and circumstance of the injury" (*Denmark v Wal-Mart Stores*, 266 AD2d 776, 777; *see, Trincere v County of Suffolk, supra*, at 977; *see also, Maloid v New York State Elec. & Gas Corp.*, 257 AD2d 712).

In light of such standard, we find the height differential trivial; both the testimonial and documentary evidence confirm that the seams between these granite slabs were open and obvious and capable of being avoided. Since "an 'owner of a public passageway may not be cast in damages for negligent maintenance by reason of trivial defects on a walkway, not constituting a trap or nuisance, as a consequence of which a pedestrian might merely stumble, stub his toes, or trip over a raised projection' " (*Sullivan v State of New York, supra*, at 989, quoting *Liebl v Metropolitan Jockey Club*, 10 AD2d 1006), allegations of negligence premised upon this defect were properly dismissed as a matter of law (*see, Julian v Sementelli*, 234 AD2d 866).

Concerning the absence of a second handrail, the Building Code provides, in relevant part, that "[s]tairs less than 44 inches in width shall be provided with a handrail on at least one side, and if 44 inches or more in width, on both sides" (9 NYCRR 765.4 [a] [11]). Since the Building Code was enacted in 1984 (9 NYCRR 651.2) and preexisting uses are not required to comply with the above requirement unless the building undergoes a renovation which, during any six-month period, has costs exceeding 50% of the replacement cost of the building (*see*, 9 NYCRR 1231.3 [c]; *Cole v Emunah Gen. Contr.*, 227 AD2d 877, 878; *Wilson v Proctors Theater & Arts Ctr. & Theater*, 223 AD2d 826, 827-828), the court properly concluded that the enumerated provision of the Building Code was inapplicable.

We further find no evidence to support a common-law negligence claim based upon the allegation that there existed a dangerous condition of which the State should have had either actual or constructive notice (*see*, *Gordon v American Museum of Natural History*, 67 NY2d 836, 837; *Wilson v Proctors Theater & Arts Ctr. & Theater, supra*, at 828). The Court of Claims noted, and we agree, that the absence of the second handrail was clearly observable and that claimant failed to establish that the presence thereof could have prevented her fall. With the court fully crediting the opinion espoused by the State's expert (*see*, *Sullivan v State of New York, supra*), no error is discerned.

Finally, with the failure of proof by claimant, we reject the contention that the Court of Claims' error in its description of Building Code requirements, had they been applicable, constitutes reversible error.

Crew III, J. P., Carpinello and Rose, JJ., concur. Ordered that the judgment is affirmed, without costs.